# Richmond.

## McCurdy, Trustee, v. O'Rourke and Others.

### March 14, 1907.

Absent, Keith, P., and Cardwell, J.

1. WILLS—*Case in Judgment—Annuity—Increase of Corpus of Estate Devised.*—A testator, by clause 2 of his will, devised real estate to his son E. for life, with remainder to his children; and if none, to a trustee named in clause 3, to be held upon precisely the same trusts as those declared in clause 3. By clause 3 he devised other real estate to a trustee with directions to lease it, and after paying expenses and repairs, to pay to his son M. $600 *per annum* till marriage, and thereafter during his lifetime to pay him $1,200 *per annum,* if the property yielded so much; to invest the residue; and upon the death of M. the real estate and the invested funds were to pass to the children, if any, of M. and their descendants by stocks, and if no such children or descendants, then to the other son E. for life, with remainder to his children or their descendants, as provided by clause 2. Clause 3 declared that the sole purpose of providing for M. was to furnish him with a maintenance and support during his natural life, and forbade him to sell, encumber or anticipate his annuity; and further provided that it should not be liable for any of his debts, present or future. By clause 4 he directed that if neither E. nor M. left any child, or descendant of any child, then the estate devised by clauses 2 and 3 should pass to the children of his uncle R. The son E. died without any child or descendant of any child during the lifetime of M. The latter claimed that by the death of E. two trust funds were created, and that he was entitled to receive $600 *per annum* from each fund until marriage, and $1,200 from each after marriage until his death.

    *Held:* But one trust fund was created, and M. is only entitled to $600 *per annum* till marriage and $1,200 *per annum* thereafter during his lifetime. The assets from which the annuity is payable are increased, but not the annuity.

2. Wills—*Vesting of Estates*.—While the law does not favor the accumulation of estates, and will, in doubtful cases, so construe a will as to bring about immediate vesting of the estate disposed of, yet when the intention of the testator is clear and explicit the courts are bound to carry it out, if lawful.

Appeal from a decree in chancery of the Chancery Court of the city of Richmond. Decree for one of the defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*Cannon & Gordon,* for the appellant.

*A. K., D. H.* and *Walter Leake,* for the appellee.

Harrison, J., delivered the opinion of the Court.

Jeremiah O'Rourke died in 1894, having first made his last will and testament, which was duly admitted to record in the Chancery Court of the city of Richmond. The testator left surviving him two sons, Edward C. O'Rourke and Michael J. O'Rourke, and the object of this proceeding is to have determined the rights of Michael under this will.

It is necessary to a proper understanding of the question at issue that the second and third clauses of the will be set forth here. They are as follows:

"Item Second. I devise to my said son, Edward, my house and lot on the north side of Broad street, in said city, No. 208, between Jefferson and Madison streets, nearest to Jefferson street, also two houses and lots on east side of Seventh street, between Marshall and Clay streets, in said city; also my house and lot on the north side of Catherine street, below Smith and Munford streets, in said city, all to be held by him for life only, with remainder in fee simple to the children of my said son Edward living at his death, and to the children of any deceased

child of his living at his death—but the children of any such deceased child to take only their parent's share, but if my said son Edward shall not at his death leave surviving him any child or descendants of any child, then the real estate devised in this item of my will shall pass to John Kain in trust, to be held by him in trust for Michael J. O'Rourke, my son, and for the children of said Michael, upon precisely the same trusts as those declared in the next or third (3d) item of my will.

"Item Third. I devise to John Kain, of said city, upon the trusts hereinafter in this item of my will set forth and declared, the following real estate, in said city of Richmond, as follows, to-wit:   My house and lot on the north side of Broad street, in said city, No. 210, between Jefferson and Madison Streets, nearest to Madison Street; also four houses and lots on streets, nearest to Madison street, in said city, between Madison and Monroe streets; also two houses and lots on the east side of Monroe street, between Broad and Marshall streets in said city, upon the following trusts, to-wit:   That the said John Kain shall rent out and lease the said real estate hereby devised to him and shall collect and receive the rents and issues and profits thereof, and shall out of said rents, issues and profits pay annually the insurance, taxes, charges and assessments on said real estate and also his annual commission on receipts and for all such repairs to said real estate as may be necessary in his judgment to make from time to time; and out of the net balance remaining from the rents and receipts of said real estate he, the said trustee, shall during each and every year pay over to my son, Michael J. O'Rourke, the sum of six hundred dollars *per annum* during the life of my said son, Michael J. O'Rourke, or until his marriage; and the remainder of such receipts shall be invested by said trustee, each and every year until the death or marriage of my said son, Michael J. O'Rourke, whichever shall happen first, in interest-bearing bonds of the city of Richmond, Va., such investments to constitute when made a part of the

trust fund or subject. In the event of the marriage of my said son, Michael J. O'Rourke, the said trustee, from and after his said marriage, shall during each and every year thereafter during the life of said Michael J. O'Rourke pay to him the sum of twelve hundred dollars *per annum* out of said net receipts, if the said net receipts shall amount to so much; and if the net receipts shall not amount to so much in any year, then he shall pay to said Michael J. O'Rourke so much of said net receipts for that year as there may be; the net receipts over and above the said twelve hundred dollars in any year shall be invested in interest-bearing bonds of the city of Richmond, aforesaid, in the manner hereinbefore provided.

"Inasmuch as this provision in favor of my said son, Michael J. O'Rourke, is made for the sole purpose of providing him with a maintenance and support during his natural life, I hereby declare that my said son, Michael J. O'Rourke, shall have no power to sell or encumber or anticipate the payment of said annuity; and that the same shall not in any manner whatsoever be liable for the payment of any debt he may now owe or which he may hereafter contract.

"The said annuity may be paid by the said trustee in monthly or quarterly installments as he may deem best; at the death of said Michael J. O'Rourke the real estate in this item of will as above described, and any bonds of the city of Richmond which may be added to the trust fund as before provided for, shall pass to such of the children of said Michael J. O'Rourke as may be living at his death, and to the descendants of any deceased child of his, in fee simple free from any trust; the descendants of any such deceased child to take the share their parent would have taken. But if at the death of the said Michael J. O'Rourke he shall leave no child, nor descendant of any child of his, surviving him, then the whole of the trust subject, including said real estate, shall descend and pass to my son, Edward C. O'Rourke, for his life, if the said Edward be then living, with remainder in fee simple to the children of

the said Edward living at his death, and to the children of any deceased child of his living at his death, precisely in the same manner as provided for in respect to the real estate devised in the second item of my will."

By the fourth clause of his will the testator provides that if at the death of the survivor of his two sons there should be living no child or descendant of any child of either, then the estate devised by the second and third clauses of his will shall pass to the children of his uncle, Thomas O'Rourke.

On the 21st of October, 1900, Edward C. O'Rourke died without children or the descendants of any children, and thereupon the real estate mentioned in the second clause of the will passed to the management and control of the appellant, who is the successor to the trustee named in the third clause.

In October, 1901, the appellant filed the bill in this cause, asking the guidance of the Chancery Court in the management of his trust, continuing, under the advice of counsel, to pay, as he had done theretofore, to Michael J. O'Rourke the sum of fifty dollars per month, or at the rate of six hundred dollars *per annum,* as the amount he was entitled to receive under the terms of his father's will. In March, 1906, Michael J. O'Rourke filed a petition in the cause, asking for a construction of the will, and claiming that from and after the death of Edward C. O'Rourke the real estate mentioned in the second clause of the will became a separate and distinct trust estate in the hands of the appellant, from which he was entitled to receive an additional $600 *per annum* to that provided for in the third clause, making in all an annuity of $1,200 per annum instead of $600.

An answer was filed to this petition by the trustee, and thereupon the decree appealed from was entered, holding that upon the death of Edward C. O'Rourke, without issue, the real estate devised in clause two of the will passed to the trustee as an independent trust estate, separate and distinct from the estate originally devised in trust for Michael under the third clause of the testator's will, and that Michael, so long as he

remained unmarried, was entitled to a net annual income of six hundred dollars from each of the trust estates; and further, that in the event of his marriage he should be entitled to a net annual income of twelve hundred dollars from each of such trust estates, or so much of such net income as there might be, not exceeding twelve hundred dollars from each. And the trustee was directed to keep the estates devised by clauses second and third of the will, as well as the accounts concerning each, separate and distinct.

We are of opinion that the conclusion reached by the learned judge of the Chancery Court does not carry out the intention of the testator as we gather it from the very carefully prepared will which he has left. It is manifest that the leading thought of the testator was to preserve as far as possible the results of his life's labor for the benefit of objects beyond his two sons. Throughout his will the intention is clear that the corpus of his estate, together with any accretions provided for, should go to his grandchildren. His solicitude that such corpus and accretions should be preserved for the benefit of his own blood is further shown by the provisions for the children of his uncle Thomas, in the event that his sons should die without descendants of either. With these ultimate objects of his bounty prominently in view he provides by the second clause of his will that the real estate mentioned therein shall be held by his son Edward *for life only,* with remainder in fee simple to the children of Edward living at his death, and to the children of any deceased child of his; but if Edward should die without descendants, then the real estate devised by the second clause is to pass to John Kain in trust for Michael J. O'Rourke, and for the children of Michael, upon precisely the same trusts as those declared in the next or third item of the will.

We are unable to find in this second clause any language which warrants the conclusion that the testator intended thereby to create a second trust estate, separate and distinct from that created by the third clause of his will. It seems clear

that the purpose was, upon the happening of the events referred to in the second clause, to provide that the estate mentioned therein should pass to the trustee named in the third clause, and become part of the trust subject created by that clause, to be administered by the trustee, subject to the limitations thereby imposed, and upon precisely the same trusts therein declared. The trustee was the same, and the terms upon which the trust subject was to be held were the same. It was, in effect, an enlargement of the assets of the trust without any change as to the rights of the *cestui que trust* or the terms upon which the trust was to be administered.

Nor are we able to gather from this second clause any language showing that the testator intended, upon the happening of the contingencies mentioned in the second clause, that the provision made by him for Michael in the third clause should be doubled. It is manifest from the third clause of the will that the testator regarded his son Michael as a spendthrift, to whom he could not safely entrust any part of his property. The only solicitude that the testator had or expressed with respect to his son Michael was to provide him with what he considered a sufficient maintenance. The testator fixed upon $600 *per annum* as a sum sufficient to accomplish the end in view, and provided that the trustee should, in his discretion, pay it to him in monthly or quarterly installments; providing further that in the event of his marriage Michael should be paid $1,200 *per annum* as a support, if the proceeds of the trust should amount to that much. The testator in further dealing with this subject uses the following clear and emphatic language: "Inasmuch as this provision in favor of my said son, Michael J. O'Rourke, is made for the sole purpose of providing him with a maintenance and support during his natural life, I hereby declare that my said son, Michael J. O'Rourke, shall have no power to sell or encumber or anticipate the payment of said annuity, and that the same shall not in any manner whatsoever be liable for the payment of any debt he may now

owe, or which he may hereafter contract." Here we have the
testator declaring that his sole purpose with respect to Michael
is to provide him with a maintenance and support during his
natural life, and hedging the provision about so that his son
could not anticipate it, or make it liable for his debts. If, in
the judgment of the testator, $600 *per annum* was sufficient to
maintain Michael during the lifetime of Edward, it is to be
presumed that it would continue to be sufficient after the death
of Edward. At any rate, there is no appeal from the judgment
of the testator on that subject, for he has said that his sole
purpose was to provide Michael with a maintenance, not during
Edward's lifetime, but *during the natural life of Michael.* The
original trust estate, before it was enlarged by the falling in of
Edward's estate, was, in the contemplation of the testator, ample
to have furnished Michael with a larger annuity than $600, for
the testator provides that, after paying Michael, th esurplus shall
be invested by the trustee in Richmond city bonds each and
every year, such investments to constitute when made "a part
of the trust fund or subject." There is no indication here ot
a purpose at any time to increase the annuity in question; on
the contrary, there is a declared purpose to use the surplus in-
come, after paying the $600 to Michael, to increase the trust
fund from year to year for the benefit of the ultimate objects
of the testator's bounty.

The argument is made that under this construction of the
will Michael would derive no benefit from the second clause,
whereas it is there provided that in the event of Edward's death
without descendants the estate devised should pass to the trustee
named in the third class, to be held by him in trust for the
benefit of Michael and for the children of Michael.

The enlarged trust fund, brought about by the death of Ed-
ward without descendants, furnishes a greatly increased guaran-
tee of the annuity provided for Michael of $600 before mar-
riage and $1,200 after marriage. It further assures a greatly
increased estate for Michael's children, should he have any.

But apart from these considerations it is sufficient to say that the testator has in clear and explicit terms fixed the amount that he deemed sufficient *for the sole purpose of maintaining Michael during his natural life,* and the courts have no power to either increase or diminish that allowance. In this connection it may be remarked that when the testator created the trust established by the third clause of his will he had already provided that in the event of Edward dying without descendants the estate devised in the second clause should pass to the trustee named in the third clause; and yet, with a full knowledge that the trust fund might be increased by the happening of the events mentioned in the second clause, he deliberately declared in fixing the amount of the annuity for Michael, that his sole purpose was to provide Michael with a maintenance during his natural life.

The testator has, it seems to us, throughout his will expressed his purpose with unusual clearness, and it must be presumed that if he had intended upon the death of Edward without descendants that Michael should have for a maintenance twice the sum clearly stated by him to be sufficient for that purpose he would have expressed so radical a departure in terms, at least as clear as those employed by him thereafter in fixing the rights of Michael in the trust he had created. The limitation over to the children of his uncle, as well as the previous limitation of Michael's trust estate to Edward's children, and Edward's portion over to Michael's children, shows, we think, quite conclusively that the testator had in mind, after providing what he considered an ample support for Michael, to accumulate an estate out of the surplus income which would ultimately vest in fee simple in those of his own kindred, rather than have it dissipated by a spendthrift son.

In seeking the intention of the testator, which is to be gathered from the language he has used, we have not overlooked the principle that the law does not favor the accumulation of estates, and will in doubtful cases so construe a will as to bring

about the immediate vesting of the estate disposed of. When, however, the intention of the testator is, as it seems here, clear and explicit, the courts are bound to carry out such intention, provided only that the purposes sought to be attained are not in conflict with the law of the land.

We are of opinion that the petition filed by the appellee, Michael J. O'Rourke, should have been dismissed.

For these reasons the decree appealed from must be reversed and the cause remanded for further proceedings not in conflict with this opinion.

*Reversed.*